RON SUNG, ESQ.
Nevada State Bar No. 13047
DAVID OLSHAN, ESQ.
Nevada State Bar No. 4126
Nevada Legal Services, Inc.
530 South Sixth Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Janie Smith*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JANIE M. SMITH, Relatrix, <br><br> and <br><br> JANIE M. SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> SC INVESTMENT LAS VEGAS, INC., a Nevada Corporation, d/b/a Sky Court Harbors, PACIFICA S.D. MANAGEMENT, LP, a California Limited Partnership, and NIWA NOBUO, <br><br> Defendants. | Case No.: 2:15-cv-02163-RFB-GWF <br><br><br> **STIPULATION AND ORDER TO AMEND COMPLAINT** |

Plaintiff JANIE SMITH and Defendants SC INVESTMENT LAS VEGAS, INC., d/b/a/ SKY COURT HARBORS, PACIFICA S.D. MANAGEMENT, LP., and NIWA NOBUO, by and through their respective counsels of record, hereby stipulate and agree that Plaintiff may, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, file an amended complaint in the form of the Amended Complaint attached hereto as Exhibit A.

1

1  Upon filing of the Court's order granting permission to amend, Plaintiff JANIE SMITH
2  shall file and serve the Amended Complaint within five (5) days thereof.
3  The Parties are stipulating in the interest of judicial economy, and this Stipulation shall
4  not be construed to prejudice any claims or defenses asserted by the Parties in this action. The
5  Parties are not waiving or conceding any rights to otherwise make arguments against the
6  allegations contained in Plaintiff's Amended Complaint.

7

8  6/3/2016                          /s/ RON SUNG
   Date                              RON SUNG, ESQ.
9                                    Nevada State Bar No. 13047
                                     DAVID OLSHAN, ESQ.
10                                   Nevada State Bar No. 4126
                                     Nevada Legal Services, Inc.
11                                   530 South Sixth Street
                                     Las Vegas, Nevada 89101
12                                   (702) 386-0404 x148
                                     Facsimile (702) 388-1641
13                                   *Attorneys for Norma Arias Benitez*

14
   6/3/2016                          /s/ CRAIG DUFORD
15 Date                              STEPHEN C. GREBING, ESQ.
                                     Nevada Bar No. 5972
16                                   CRAIG W. DUFORD, ESQ.
                                     Nevada State Bar No. 12574
17                                   WINGERT GREBING BRUBAKER & JUSKIE LLP
                                     One America Plaza, Suite 1200
18                                   600 West Broadway
                                     San Diego, CA 92101
19                                   (619) 232-8151; Fax (619) 232-4665
                                     sgrebing@wingertlaw.com
20                                   cduford@wingertlaw.com

21

22

23

24

2

**ORDER**

Based on the written stipulation of the parties and good cause appearing in support thereof, Plaintiff may file an amended complaint in the form of the Amended Complaint attached hereto as Exhibit A within five (5) days of the filing of this Order.

IT IS SO ORDERED:

_____
RICHARD F. BOULWARE, II
United States District Judge

DATED: February 27, 2017.

Exhibit A

RON SUNG, ESQ.
Nevada State Bar No. 13047
DAVID OLSHAN, ESQ.
Nevada State Bar No. 4126
Nevada Legal Services, Inc.
530 South Sixth Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Janie Smith*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JANIE M. SMITH, Relatrix,<br><br>and<br><br>JANIE M. SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>SC INVESTMENT LAS VEGAS, INC., a Nevada Corporation, d/b/a Sky Court Harbors, PACIFICA S.D. MANAGEMENT, LP, a California Limited Partnership, and NIWA NOBUO,<br><br>Defendants. | Case No.: 2:15-cv-02163-RFB-GWF<br><br>**AMENDED COMPLAINT** |

### INTRODUCTION

This action is brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 and 3730(b)(1). Plaintiff Janie M. Smith ("Smith") rents a unit at 9025 W Desert Inn Rd #121 Las Vegas, Nevada, from Defendants SC Investments Las Vegas, Inc., doing business as Sky Court Harbors. Smith is a participant of the federally-regulated rent subsidy program known as the Section 8 Tenant-Based Housing Choice Voucher Program ("Section 8"), administered by

1

the Southern Nevada Regional Housing Authority ("SNRHA"). Defendants and SNRHA entered into a Housing Assistance Payment Contract ("HAP Contract"), which prohibited Defendants from charging Smith side payments in the form of additional rent or other fees.

Defendants violated the FCA by demanding illegal side payments in the form of a $100 month-to-month fees and late fees from Smith while under the HAP Contract with SNRHA. The United States seeks all remedies available under the FCA. Smith seeks a statutory share of any awarded damages paid to the United States under the FCA, declaratory relief, court costs and reasonable attorney fees.

## PARTIES

1. Plaintiff Janie Smith was a tenant at the premises located at 9025 W Desert Inn Rd #121 Las Vegas, Nevada ("the premises") from June 30, 2014 to December 7, 2015.

2. Plaintiff Janie Smith files this action on behalf of the United States of America to enforce her rights.

3. Defendant SC Investment Las Vegas, Inc., a Nevada corporation, held itself out as the owner of the premises.

4. Defendant Pacifica S.D. Management, LP, a California Limited Partnership, managed the premises.

5. Defendant Niwa Nobuo was the owner of the premises, according to the Clark County Assessor.

## JURISDICTION

6. This Court has jurisdiction over the federal claim pursuant to 28 U.S.C. §§ 1331, 1345 and 1367, 31 U.S.C. § 3732. Fed. R. Civ. Pro. 57 and 28 U.S.C. § 2201(a) authorize declaratory relief.

## VENUE

7. Defendants committed the unlawful acts in Clark County in the State of Nevada. Venue is proper under 28 U.S.C. § 1391, 31 U.S.C. § 3732 and 28 U.S.C. § 2201(a).

## STATEMENT OF FACTS

### *Month-to-Month Fees*

8. The federal government instituted Section 8 to assist low income families with obtaining decent, safe, sanitary, and affordable rental housing; it is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. §1437f, and governed by regulations contained in 24 C.F.R. Part 982.

9. Under Section 8, the United States Department of Housing and Urban Development (HUD) enters into annual contribution contracts with public housing agencies, including SNRHA.

10. Pursuant to the annual contribution contract, SNRHA enters into a contract with the landlord of an existing dwelling to make monthly housing assistance payments on behalf of eligible tenants, subject to HUD approval. This contract is known as a Housing Assistance Payments Contract (HAP Contract).

11. In addition to the HAP Contract, the landlord also enters into a lease agreement with the eligible family that must comply with federal regulations.

12. On June 30, 2014, Defendants executed a lease with Smith to rent the premises starting that day. The lease set the rent at $675.

13. Defendants also entered into a HAP Contract with SNRHA on June 10, 2014, to rent the premises to Smith.

14. The HAP Contract established the initial monthly rental amount of $675. SNRHA paid $488 each month directly to Defendants on behalf of Smith. Smith paid the remaining rental portion, or $187, each month.

15. In June 2015 SNRHA changed its subsidy to $463 each month, meaning Smith's rental portion changed to $212 per month.

16. Despite the HAP Contract setting the rent at $675, Defendants began charging Smith an extra $100 per month starting July 2015.

17. Defendants charged Smith the extra $100 per month purportedly because the initial term of the lease had expired.

18. Defendants failed to provide any notice prior to increasing Smith's rent by $100 in July 2015, except by a boilerplate provision buried in Smith's lease in part 8.

19. Each month from June 10, 2014, to November 30, 2015, SNRHA paid rental subsidies directly to Defendants on behalf of Smith for a total of $8,513. For pro-rated June 2014, SNRHA paid $342. For each month from July 2014 to June 2015, SNRHA paid $488. For each month from July 2015 to November 2015, SNRHA paid $463.

*Late Fees*

20. Smith paid Defendants $227 via money order in person to the front office on February 3, 2015, $187 for rent and $40 for water, sewer and trash.

21. According to Defendants' ledger of Smith's account, Defendants did not account for Smith's February 3, 2015, payment until February 4, 2015.

22. According to Defendants' ledger of Smith's account, Defendants charged Smith a $50 late fee on February 4, 2015.

23. Since February 4, 2015, Defendants have charged Smith late fees of $50 on the 4th of each month and $5 per day.

24. According to Defendants' ledger of Smith's account, Smith allegedly owed $58.83 to Defendants on February 4, 2015, but for the $50 late charge.

25. On June 18, 2014, Smith paid Defendants $237 and $183.83 for a total of $420.83 via two money orders. These payments, however, are not included in Defendants' ledger of Smith's account.

26. The lease sets security deposit at $250.

27. On August 8, 2014, Defendants charged Smith $50 for security deposit even though Defendants already charged Smith $250 for security deposit on June 30, 2014.

28. Defendants did not provide any notice to Smith about her late fees going back since February 2015 until November 2015.

## CAUSE OF ACTION:
## VIOLATION OF FALSE CLAIMS ACT

29. The False Claims Act, 31 U.S.C. § 3729 *et seq.*, imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" from the United States Government. 31 U.S.C. § 3729(a)(1).

30. Any person who violates the False Claims Act is liable to the United States for not less than $5,500 and not more than $11,000, plus three times the damages suffered by the United States as a result of such person's actions, as well as for the costs of a civil action brought to recover penalty or damages under the False Claims Act. 31 U.S.C. § 3729(a)(1) and (3); 28 C.F.R. 85.3(a)(9) (2014) (adjusting damages amount).

31. The False Claims Act defines "knowingly" to include the actions of a person who acts in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information, or has actual knowledge of the information; no proof of specific intent to defraud is necessary. 31 U.S.C. § 3729(b)(1). "Claim" is defined to include "any request or demand" for money made to a recipient if the United States pays "provides any portion of the money… which is requested." 31 U.S.C. § 3729(b)(2).

32. On June 30, 2014, Defendants signed the HAP Contract with SNRHA setting the rent at $675 per month.

33. Part C, paragraph 5, of the HAP Contract and federal law prohibited Defendants from charging additional rent, otherwise known as side payments, and required Defendants to immediately return any excess rent payment to Smith. 24 C.F.R. 983.353(b)(3); 24 C.F.R. 982.451(b)(3) and (4).

34. Part C, paragraph 5, of the HAP Contract and federal law defines rent as "payment for all housing services, maintenance, equipment, and utilities to be provided by the owner without additional charge to the tenant, in accordance with the HAP contract and lease." 24 C.F.R. 983.353(b)(2).

35. Part A, paragraph 8, of the HAP Contract listed the respective responsibilities for utilities and appliances for both the owner and tenant. If the utility or appliance was not listed in this section, "the owner shall pay for all utilities and appliances provided by the owner."

36. Under Part B, paragraph 8, of the HAP and federal law, Defendants certified not to receive any side payments. 24 C.F.R. 983.209(g) and (h).

37. Under Section 9-I.E., Page 9-8, of the Administrative Plan for the SNRHA Housing Choice Voucher Program, accepting side payments for additional rent would result in termination of the HAP and would bar the owner from further participation in the Section 8 Program.

38. Defendants agreed to the terms of the HAP Contract and knowingly or with reckless disregard accepted side payments from Smith thereby breaching the HAP Contract.

39. The HAP Contract between Defendants and SNRHA prohibited Defendants from collecting additional rent, otherwise known as side payments.

40. Even though the HAP Contract set rent at $675, Defendants charged an extra $100 per month (or $775 total) for rent starting July 2015.

41. Even though the HAP Contract set rent at $675 and Smith was current on her rent, Defendants charged $50 in late fees starting February 2015. In addition, Defendants charged $5 per day in late fees after the 3rd of each month.

42. Defendants knowingly collected these illegal side payments in breach of the HAP Contract while simultaneously receiving monthly rental payments from SNRHA under the HAP Contract.

43. Defendants violated the FCA each time Defendants received payments from SNRHA while knowingly breaching the HAP Contract.

44. Defendants received at 18 rental subsidy payments from SNRHA on behalf of Smith from June 2014 to November 2015, each constituting a separate false claim or misrepresentation against the United States.

45. Under federal law and the Administrative Plan for the SNRHA Housing Choice Voucher Program, the SNRHA would have terminated the HAP and ceased payments to Defendants upon learning about the side payments.

46. The United States Government suffered damages as a result of violations of the FCA because the housing assistance money from HUD paid by SNRHA to Defendants would not have occurred but for Defendants' false claims and misrepresentations.

47. The United States Government sustained damages equal to all payments made to the Defendants pursuant to Smith's Section 8 assistance.

## DECLARATORY RELIEF:
## DEFENDANTS BREACHED THE LEASE
## BY ERRONEOUSLY CHARGING LATE FEES

48. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

49. According to Defendants' ledger, Defendants allege Smith owes around $2,000 in late fees since February 2015.

50. Had Defendants accounted for Smith's June 18, 2014, money orders and removed its erroneous extra $50 security deposit from August 9, 2014, Smith would have had a positive balance with Defendants when Defendants first charged late fees in February 2015.

51. Moreover, by neglecting to inform Smith about her late fees for 10 months, Defendants waived their right to charge and collect late fees from Smith.

52. Accordingly, Smith requests the Court to declare that she does not owe late fees to Defendants and declare she actually has a credit with Defendants.

## DECLARATORY RELIEF
## VIOLATION OF NRS 118A.300

53. Under Nevada Revised Statutes 118A.300, "The landlord may not increase the rent payable by a tenant unless it serves the tenant with a written notice, 45 days or, in the case of any periodic tenancy of less than 1 month, 15 days in advance of the first rental payment to be increased, advising the tenant of the increase."

54. Defendants failed to provide any notice to Smith prior to charging her an additional $100 per month starting July 2015.

55. By failing to provide notice prior to increasing the rent, Defendants violated NRS 118A.300.

56. Accordingly, Smith requests the Court to declare Defendants' rent increase invalid in violation of NRS 118A.300.

## FAILURE TO RETURN SECURITY DEPOSIT
## IN VIOLATION OF NEVADA REVISED STATUTES 118A.242

57. Under Nevada Revised Statutes ("NRS") 118A.242, the landlord must return the security deposit within 30 days of the tenant vacating the property. If the landlord deducts any amount from the security deposit, "the landlord shall provide the tenant with an itemized written accounting of the disposition of the security or surety bond, or a combination thereof, and return any remaining portion of the security to the tenant no later than 30 days after the termination of the tenancy."

58. If the landlord fails comply with NRS 118A.242, the landlord is liable to the tenant for up to twice the amount of the security deposit.

59. Smith received neither the return of the security deposit nor an itemized written accounting of the disposition of the security deposit from Defendants within 30 days of vacating the premises.

60. Accordingly, Defendants violated NRS 118A.242 and are liable to Smith for up to twice the amount of the $250 security deposit, or $500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Janie M. Smith and the United States of America respectfully request the following relief:

A. Find that Defendants violated the False Claims Act and is liable to the United States.

B. Assess a civil penalty against Defendants for each of at least 17 separate violations of the False Claims Act in the amount of not less than $5,500 and not more than $11,000.

C. Award the United States three times the amount of damages that it sustained as a result of Defendants' acts.

D. Award Smith the *qui tam* plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

E. Declare that Smith does not owe any late fees to Defendants and award Smith the reimbursement of any additional overpayments to Defendants.

F. Declare that Defendants' rent increase violates NRS 118A.300 and is void.

G. Award Smith any court costs and reasonable attorney's fees.

H. Grant whatever other relief is just and proper.

DATED this 3rd day of June, 2016.

Respectfully Submitted,

_____
RON SUNG, ESQ.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Nevada State Bar No. 13047
DAVID OLSHAN, ESQ.
Nevada State Bar No. 4126
Nevada Legal Services, Inc.
530 South 6th Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Janie Smith*